UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM D. SLOAN, JR., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-2322-JES-EIL |
| | ) |
| COUNTY OF MACON, ILLINOIS, and ALBERT J. SCOTT, | ) |
| | ) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is now before the Court on the Motion for Summary Judgment (Doc. 29) of Defendants Macon County and former Macon County State's Attorney, Albert Scott. The original Plaintiff, Kimberly Sloan ("Sloan"), filed her Complaint on December 31, 2018, and died on September 16, 2021. Ms. Sloan's successor in interest, William Sloan, now proceeds as the Plaintiff in this cause. Plaintiff has filed a Response to summary judgment (Doc. 38) and Defendant has filed a Reply (Doc. 40). For the reasons set forth below, Defendants' Motion (Doc. 29) is GRANTED.

**I.    BACKGROUND**

The undisputed facts reveal that at all relevant times, Sloan worked as an administrative assistant in the Macon County State's Attorney's Office ("MCSAO"). Plaintiff is proceeding on a five count complaint with Counts I-III, and V directed against the County of Macon ("County") and Count IV directed against former Macon County State's Attorney Scott. Plaintiff pleads the following Illinois state law claims: Count I retaliatory discharge by the County; Count II violation of the Illinois Whistleblower Protection Act by the County; Count IV tortious interference with an employment contract by Scott; and Count V, naming the County as a necessary party for purposes of indemnification. To survive summary judgment on Counts I, II

1

and IV, Plaintiff must sufficiently establish that Sloan was at least jointly employed by the County. Defendants deny any joint employment, claiming that the MCSAO was Plaintiff's sole employer. Defendants also assert various other defenses to the state law claims.

In Count III, Plaintiff pleads federal claims under 42 U.S.C. §1983, which provides for redress for a state actor's violation of a constitutional right. *Manion v.* Holzman, 379 F. 2d 843, 845 (1967). The initial step in any § 1983 analysis is to identify the specific constitutional right which was allegedly violated. *Kernats v. O'Sullivan,* 35 F.3d 1171, 1175 (7th Cir. 1994). Here, Plaintiff pleads that Sloan was constructively discharged in violation of her First Amendment right to freedom of association. Plaintiff also asserts First Amendment retaliation, that due to her First Amendment expression, Sloan suffered hostility which forced her to resign. Lastly, Plaintiff asserts a Fourteenth Amendment Due Process claim, that the alleged constructive discharge was undertaken without adequate process.

## II.   MATERIAL FACTS

The Court, herein, considers the facts recounted by the parties, identifying those which are in dispute.

Sloan worked in the MCSAO from 1999 to December 31, 2016, with her last position in the Domestic Violence Unit. Sloan tendered her resignation in December 2016, while on a medical leave of absence. Plaintiff alleges that Sloan was forced to resign as she had faced harassment due to her association with co-workers who did not support State's Attorney Scott. Sloan testified at her deposition that she believed she would have been fired had she not resigned.

Defendant Scott served as the Macon County State's Attorney from December 1, 2012, through November 30, 2020, and ran for re-election in 2016. In November 2015, Kim Tarvin, an

MCSAO general administrative assistant, circulated Scott's re-election petitions in the workplace. Sloan initially signed the petition, but Tarvin approached her later, outside the building, asking her to sign again. Tarvin explained that the first signature was not valid as having been obtained on County premises. Sloan refused to sign and suggests that she was targeted by Tarvin and Scott for this refusal. Defendant contests this, asserting that Scott did not know that Sloan refused to sign the petition. Tarvin has testified that she had never discussed this with Scott (Doc. 29-4 at 26) and Scott has provided affidavit testimony that he did not know who had, or had not, signed the petitions. (Doc. 29-7 at ¶ 2).

Amanda Burger, former MCSAO Personnel Director, has also submitted an affidavit. She attests that in November 2015, Tarvin approached her and Victim Coordinator, Melanie Long, at work, asking them to sign the re-election petition. They refused, as this was during work hours and on County property. Ms. Burger reported the incident to Defendant Scott. Ms. Burger attests that Sloan, along with staff members Dawn Pyles, Brandy Chisenall, Jason Van Alstine, and Robyn Lewis complained to her that Tarvin continued soliciting signatures. Burger reported this to Scott, and Robyn Lewis reported it to Gregory Mattingly, a member of the Macon County Board who served on the Justice Committee which had budget oversight of the MCSAO.

Defendant asserts that from January 2016 through April 2016, Burger and First Assistant State's Attorney Nichole Kroncke had several conversations during which Kroncke indicated that attorneys in the Domestic Violence Division were complaining about Sloan's work performance. *See* Burger Deposition (Doc. 29-5 at 69-70). In April 2016, Scott told Burger that he was considering firing Sloan who was scheduled to take a medical leave of absence. Scott instructed Burger to consult with the MCSAO staff attorneys as to the legalities of firing Sloan prior to

3

medical leave or demoting her on her return. Later, Scott and Kroncke advised Burger that when Sloan returned from leave she would be moved to a receptionist position.

On May 19, 2016, Sloan went on medical leave. On December 19, 2016, Sloan advised the MCSAO in writing that she would retire on December 31, 2016, when her unpaid leave ran out. Plaintiff testified at her deposition that her resignation was motived, in part, by the statements of co-workers Dawn Pyles, Robyn Lewis, and Regan Radtke, who told her she would likely be fired when she returned from leave. Sloan also testified that she was told by others, including Amanda Burger, that Burger had been fired, in part, because she would not cooperate with Scott's plans to fire or demote Sloan. (Doc. 29-1 at 138). While Defendants object that Sloan's account of statements made by others is hearsay, the statements go to Sloan's state of mind, her reason for resigning, rather than the truth of the matter asserted, that Burger was fired due to her advocacy for Sloan.

Sloan also testified that she believed Tarvin and Scott treated her differently because of her association with others. When specifically asked who were these "others?" Sloan testified only, "[o]ther people in the office or things of that nature." *Id*. at 99.

On an unidentified date, County Board member Gregory Mattingly met with Robyn Lewis and Amanda Burger to discuss issues in the MCSAO. On April 11, 2016, the Macon County Board adopted the Macon County Employee Handbook ("Handbook") which might have been an update of a prior handbook. The Handbook contained modifications made by Scott and which were applicable to the MCSAO. (Doc. 29-7). It is not clear, but there is an inference that the Handbook, whether new or revised, was adopted in response to the problems identified in the MCSAO.

On September 13, 2016, Mattingly asked for the appointment of a Special Prosecutor to investigate State's Attorney Scott and a Special Prosecutor was appointed on January 27, 2017. An investigation was conducted, and the matter referred to a grand jury before whom Sloan testified. *Id*. at 93-94. The grand jury found that Tarvin had engaged in illegal electioneering in violation of 5 ILCS 430/5-15 "Prohibited Political Activity" and that Scott was aware of it. It was determined, however, that the applicable statute of limitations had already passed. The grand jury also found that the MCSAO work environment was "toxic and threatening" and that Scott had, among other infractions, engaged in an abuse of power. The grand jury recommended a third-party review of HR practices, record retention and separation of duties.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

## IV.   DISCUSSION

### A.   COUNTS I AND II - STATE LAW CLAIMS OF RETALIATORY DISCHARGE AND VIOLATION OF THE ILLINOIS WHISTLEBLOWER PROTECTION ACT

To sustain the Count I claim for retaliatory discharge, Plaintiff must show that the County constructively discharged Sloan in retaliation for her activities and that the discharge violates a clear mandate of public policy." *Rehfield v. Diocese of Joliet*, 182 N.E.3d 123, 132 (Ill. 2021); *Dayton v. Oakton Cmty. Coll.*, 907 F.3d 460, 470 (7th Cir. 2018). The Count II Illinois Whistleblower Protection Act claim also requires an employment relationship. *See* 740 ILCS 174/15(b) ("An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceedings, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.") As a result, for actionable claims under Counts I and II, and Count IV which will later be discussed, Sloan must have had an employment relationship with the County.

Defendants deny such an employment relationship, citing Illinois caselaw which holds that court employees are not county employees, even when the county pays their salary and

6

benefits. Defendant principally relies on *Orenic v. Illinois State Labor Relations Bd.*, 537 N.E.2d 784 (Ill. 1989), where the Illinois Supreme Court found that a county is not a joint employer of public defenders and other court employees, even though the Illinois Constitutional requires that counties fund the courts. *Id*. at 795 (finding "the State, not a county, is the sole employer of all court employees" and "[e]xcept for setting and paying salaries and providing facilities … the counties are entitled to no other role in regard to the courts' nonjudicial employees that might arguably be considered the role of a joint employer." *Id*. at 797. Defendants also cite *Ingemunson v. Hedges*, 549 N.E.2d. 1269, 1270 (Ill. 1990), which held that the office of the State's Attorney was established under the judicial articles to the Illinois Constitution, not those of the executive, legislative or local government.

Defendant asserts that as *Ingemunson* found that the State's Attorney's Office is part of the judicial branch and, as *Orenic* found that a county is not a joint employer of judicial branch employee, it is axiomatic that employees of the State's Attorney's Office are judicial, not county employees. This is so even as here, where "a county pays the salaries of … nonjudicial employees in the judicial branch, or even administers personnel policies covering them by agreement with the judicial branch." *Orenic*, 537 N.E.2d at 795.

In response, Plaintiff offers the conclusory statement that "[a]s an employee of Macon County, Kim Sloan was assigned to work at the MCSAO; and as a result Macon County was a joint employer with MCSAO." (Doc. 38 at 16). Plaintiff offers nothing, however, to support the sweeping statement that Sloan was employed by the county and merely assigned to the MCSAO. Plaintiff does not address Defendant's citation to the Illinois Constitution and unsuccessfully seeks to distinguish *Orenic* and *Ingemunson*.

7

Defendants assert that the State's Attorney's Office had statutory authority over MCSAO employees, so the County could not have had the "significant control" necessary to qualify as a joint employer. Defendants cite Scott's affidavit where he attests that it was his Office, not the County, which undertook the hiring, firing, and management of MCSAO employees. (Doc. 29-7 at 2). *See Orenic*, 537 N.E.2d at 794 (finding that joint employment entails "two or more employers exert[ing] significant control over the same employees-where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment"; *id.* (finding county was not a joint employer where it did not share responsibilities for "hiring, firing, promotions, demotions, wages, work hours, etc.").

Plaintiff responds that this affidavit is self-serving and goes to an ultimate issue to be determined by the trier of fact. As the Seventh Circuit has made clear, "[m]ost affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a [party's] evidence when deciding whether a material dispute requires trial." *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (quoting *Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005)). "Sworn affidavits, particularly those that are detailed, specific, and based on personal knowledge are "competent evidence to rebut [a] motion for summary judgment." *Id*.

Plaintiff similarly misconstrues his burden where Defendants have identified credible evidence that there is no material issue of fact to support that the County was Sloan's joint employer. Plaintiff may not defend merely by claiming that this is an ultimate issue not amendable to summary judgment. Once a properly supported motion for summary judgment is advanced, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby, Inc.*, 477 U.S. at 250. *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and

8

supported by evidence ... the nonmoving party may not rest on mere allegations or denials in its pleadings.")

The only evidence Plaintiff cites to support that the County was a joint employer is that the County paid Sloan's benefits and salary, a position discredited in *Orenic*, and that the MSCAO employee handbook was a modified version of the County's handbook. Plaintiff goes on to cite *Robinson v. Sappington*, 351 F. 3d 317, 339 (7th Cir. 2003) for the proposition that "[t]he issue of a joint employer relationship is a question of fact." (Doc. 38 at 24). However, the Court is tasked at summary judgment with determining whether there is a genuine dispute "such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. The Court finds that Plaintiff has not come forth with sufficient evidence to raise as a material issue, that the County was Sloan's joint employer.

As the Court finds that Plaintiff has failed to support his assertion that the County employed Sloan, it need not consider Plaintiff's retaliatory discharge and Whistleblower Act claims which are predicated on this employment relationship. The Court, therefore, does not consider Defendants' objections that the retaliatory discharge and Whistleblower claims were filed beyond the applicable one-year statutes of limitations; that Illinois does not recognize "constructive" retaliatory discharge; and that Sloan did not engage in protected activity until after the discharge and so does not come under the protections of the Whistleblower Act. The Count I Illinois state law retaliatory discharge claim and Count II Illinois Whistleblower Act claim are dismissed with prejudice.

### B. COUNT III - SECTION 1983 CLAIMS

In Count III, Plaintiff pleads that the County is liable under § 1983 for violation of Sloan's First and Fourteenth Amendment rights. Section 1983 does not, itself, create substantive

9

rights but "operates as a 'means for vindicating federal rights conferred elsewhere.'" *Dayton v. Oakton Cmty. Coll.*, 907 F.3d 460, 470 (7th Cir. 2018) (quoting *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011)). Section 1983, which applies to the states through the Fourteenth Amendment, provides in pertinent part that '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law.'" 42 U.S.C. § 1983; *Tarpley v. Keistler*, 188 F.3d 788, 791 (7th Cir. 1999).

Here, Plaintiff asserts that the County, as Sloan's joint employer, violated her First Amendment rights of free political association; retaliated against her for exercising this right, in violation of the First Amendment; and violated Fourteenth Amendment Due Process by constructively firing her without adequate process. Specifically, Plaintiff claims that Sloan was forced to resign due to her knowledge of the illegal electioneering by Kim Tarvin; her association with individuals who did not support Scott's bid for re-election; her association with individuals who spoke out against Scott for allegedly exceeding his authority; and her association with individuals who accused Scott of committing illegal acts. (Doc. 38 at 21-22). Here, of course, the Court has found that the County was not Sloan's employer, and so could not have discharged her. Still, whether or not it employed Sloan, the County could be potentially liable to her if her First Amendment rights were violated through an official policy, custom or practice of the County. *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

"Freedom of expressive association, arises from the First Amendment and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment." *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005). To succeed on an expressive

association claim, a plaintiff must show not only that she engaged in "associational activity" but that it "relate[d] to a matter of public concern." *Id.* Generally speaking, when public employees complain to an employer of illegal workplace activity, they are considered as acting within the scope of their official duties, rather than as private citizens. *See Spiegla v. Hull*, 481 F.3d 961, 966-67 (7th Cir. 2007) (finding that correctional officer was not acting as a private citizen when she complained to her superiors of co-workers' suspected theft) (collecting cases). *See also Kubiak v. City of Chic.*, 810 F.3d 476, 481 (7th Cir. 2016) ("public employees speaking 'pursuant to their official duties' are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech.")

However, the Court need not consider the merits of the expressive association claim as Plaintiff has failed to implicate the County. He has failed to establish that the alleged constitutional injury resulted from a policy, custom or practice of the County. *Wilson v. Giesen*, 956 F.2d 738, 744 (7th Cir. 1992); *Burger v. Cnty. of Macon*, 942 F.3d 372, 373 (7th Cir. 2019). The plaintiff in the cited *Burger* case was Amanda Burger, the MCSAO Personnel Director referenced supra. Burger brought suit against sole Defendant Macon County, alleging that the County was liable under § 1983 for her firing by Kroncke and Scott. The Seventh Circuit considered whether the County could be liable for the actions of Kroncke and Scott, who were state, not county officials. It found that such liability could exist if Kroncke and Scott had acted with County policymaking authority. The Court stated, "even decisions by a state officer may constitute county policy in certain situations—specifically, when the county can and does delegate county policymaking authority to the state officer." *Id*. at 375.

Noting that the question of whether a state official had policymaking authority turned on state law, the Court referred to 55 ILCS 5/3-9006 which provides: "The State's Attorney shall

control the internal operations of his or her office and procure the necessary equipment, materials and services to perform the duties of that office." *Id*. Finding this dispositive, the Court determined that the statute gave "exclusive control over the internal operations of the State's Attorney's Office directly to the State's Attorney; the county cannot choose otherwise." *Id*.

The Seventh Circuit determined, by "statutory prescription," that the State's Attorney, not the County, was responsible for the internal operations of the State's Attorney's Office and had the "managerial authority to hire and fire." *Id*. at 375-376 (internal citations omitted). The Court affirmed the dismissal of Macon County under *Monell*, finding that Plaintiff had failed to establish that Kroncke and Scott acted as County policymakers where the County itself had no authority over the operations of the State's Attorney's Office and "could not have delegated any decisional authority on internal-operation matters to Scott and Kroncke." *Id*. at 375.

Here, Plaintiff attempts to impute Scott's actions to the County; that Scott had County policymaking authority. Plaintiff asserts that Scott was a "Department Head" employed by the County, citing the Handbook which defines Department Head as "any elected official/department supervisor with vested authority to manage a group of employees." (Doc. 38 at 11). This bare reference, however, fails to overcome the cited Illinois Constitutional provisions and caselaw which establishes that a county State's Attorney is a state official, not a local county-employed official. Certainly, if Scott were its agent or employee, the County would have potential liability for his actions under a state law *respondeat superior* theory. However, this is a § 1983 claim to which *respondeat superior* does not apply. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Plaintiff has advanced no theory under which the County may be held accountable for Scott's actions.

Plaintiff further asserts that the County may be held liable through the inaction of County Board Member Gregory Mattingly who was aware of the alleged hostility, harassment and retaliation faced by Sloan. Plaintiff has provided the verified petition of Mattingly, filed in support of his request for the appointment of a special prosecutor to investigate Scott. (Doc. 38-2). There, Mattingly attested that he was "Chairman of the Macon County Board Justice Committee, charged by the Macon County Board with oversight functions of the County Civil and Criminal justice systems, including certain oversight functions concerning the Macon County State's Attorney's Office."

Mattingly's verified petition appears to be offered to support that Mattingly had policymaking authority over the MCSAO so as to render the County liable for his conduct under *Monell*. A plaintiff can establish such liability where he alleges "that the constitutional injury was caused by a person with final decisionmaking authority.'" *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (quoting *Estate of Sims v. County of Bureau,* 506 F.3d 509, 515 (7th Cir. 2007)). This argument comes up short, however, as Plaintiff offers nothing to support that Mattingly had policymaking authority over the MCSAO. Mattingly does not lay claim to such authority where he attests only that he had "certain oversight functions concerning the Macon County State's Attorney's Office."

Plaintiff also asserts a substantive due process claim under the Fourteenth Amendment. There, he claims that Sloan had a protected property interest in her "County employment," as the Macon County Employee Handbook granted certain assurances to County and MCSAO employees. (Doc. 1 at ¶¶14-15, 31). The existence of such a property interest turns on state law. *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)). In Illinois, "a person has a property interest in his

job where he has a legitimate expectation of his continued employment based on a legitimate claim of entitlement." *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009) (citing *Moss v. Martin,* 473 F.3d 694, 700 (7th Cir. 2007)).

The Handbook states in relevant part, that: county employees will not be subject to direct or indirect political influence or coercion; political activity will not be allowed in County office buildings; and the County espouses non-discrimination, anti-harassment, and anti-retaliation policies. The Handbook also provided for a progressive discipline process under which an employee would initially be issued a verbal warning; followed by a written warning; and only if the behavior continued would the employee be suspended without pay and, finally, terminated. (Doc. 29-7).

Plaintiff asserts that the Handbook governed both County and MCSAO employees, conferring a protected property right in her employment. (Doc. 38 at 16). However, the Court, has determined that the County was not Sloan's employer, so as to be liable for discharging her. While Scott and the MCSAO might have potential liability, Scott is not named in this Count and the MCSAO is not named in this suit. As the County was not Sloan's employer it cannot be liable to her for a due process violation in relation to her employment. Count III is dismissed in its entirety, with prejudice.

### C.  COUNT IV -  TORTIOUS INTERFERENCE

Count IV is the only Count directed against Scott, asserting that Scott constructively discharged Sloan, tortiously interfering with her County employment. As previously noted, the Count IV claim for tortious interference is predicated, along with Counts I and II, on Sloan having had an employment relationship with the County. While Plaintiff broadly asserts that Scott tortiously interfered "with the business relationship Kim Sloan enjoyed with Macon

County," he does not cite to the record or provide support for the existence of such a relationship, devoting only a scant paragraph to the issue. (Doc. 38 at 27- 28). The Court has already found that Sloan was not employed by the County, so Scott cannot be liable for interfering with this "employment."

As the Court makes this determination, it does not further consider Defendants' arguments asserting the privileges of absolute immunity and business judgment discretion. *See Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991) (discussing the latter). Count IV is dismissed with prejudice.

### D. COUNT V - COUNTY'S LIABILITY TO INDEMNIFY

In Count V, Plaintiff asserts that the County is a necessary party as it is potentially responsible to pay any official capacity judgment against "an independently elected officer," an apparent reference to Defendant Scott. (Doc. 38 at 28). Plaintiff has previously asserted, however, that the tortious interference claim is directed against Scott in his individual capacity. *See* (Doc. 38 at 2) ("In addition, Kim Sloan asserted a statutory claim for indemnification against Macon County; and an action against Scott in his individual capacity for tortious interference . . ."); and ("These [tortious interference] claims asserted against Scott are brought by Sloan against Scott in his individual capacity as Scott exceeded his authority as the State's Attorney.") *Id*. at 28.

Regardless, the Court has found that the County is not liable for Sloan's alleged forced resignation; and has found that Scott is not liable for tortious interference, as there was no employment relationship between the County and Sloan with which he could have interfered. Here, all the claims have been dismissed, there are no remaining Defendants, and there is no

potential for a judgment which the County might be called upon to indemnify. Count V is dismissed with prejudice.

## V.     CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment (Doc. 29). The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff. This case is now TERMINATED.

ENTERED this 26th day of September 2022.

                                                                s/James E. Shadid
                                                               JAMES E. SHADID
                                          UNITED STATES DISTRICT JUDGE